# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JOHNNY RAY BROWN, | |
| *Petitioner*, | 2:10-cv-00407-PMP-GWF |
| vs. | |
| | ORDER |
| BRIAN WILLIAMS, *et al.*, | |
| *Respondents*. | |

This represented habeas matter under 28 U.S.C. § 2254 comes before the Court on Petitioner's second motion (#40) for leave to conduct discovery as well as on related procedural motions (## 43, 45 & 47).

### *Background*

This matter presently is pending on a *sua sponte* show-cause inquiry as to whether the federal petition is timely. An evidentiary hearing is set for October 29, 2012, with the proviso that no further continuances should be sought absent extraordinary circumstances.

Petitioner Johnny Ray Brown challenges his 2002 Nevada state conviction, pursuant to a jury verdict, of three counts of sexual assault and one count each of battery with intent to commit a crime, burglary and grand larceny. At bottom, Petitioner seeks to establish a basis for either further tolling or delayed accrual regarding the following two periods of time: (a) 273 days between November 12, 2003, and August 12, 2004; and (b) 239 days between July 21, 2009, and March 18, 2010. Petitioner relies upon a number of grounds for tolling or delayed accrual, but the ground that is most pertinent to the present discovery motion is based upon alleged mental illness.

With regard to alleged mental illness, the expert clinical neuropsychologist retained on federal habeas review found, *inter alia*, that Petitioner's records "indicate significant delusional behavior, auditory hallucinations, and visual hallucinations on occasion," reflecting several occasions on which he appeared to demonstrate quite clear and consistent delusional behavior, and psychotic symptoms." He opined that Petitioner's "mental capacity was at least intermittently diminished by his psychiatric issues during the period in question."[1]

Petitioner's first discovery motion was filed while federal habeas counsel was investigating the matter in preparation for the filing of an extensive counseled show-cause response to the Court's show-cause order as to timeliness. On Petitioner's first discovery motion, the Court directed Respondents to turn over Petitioner's I-File and C-File. Such materials theretofore typically had been made available on request by counsel without the necessity of a discovery request or court order, but the Nevada Department of Corrections (NDOC) had declined to do so in this instance. The Court – emphatically – rejected the notion that NDOC was not subject to party discovery based on the premise that it was a third-party entity allegedly separate and apart from, rather than subject to discovery through, the particular NDOC-employed warden named as a respondent.[2]

The present motion has been filed after the Court has ordered an evidentiary hearing following review of the counseled show-cause response. Ultimately, putting the particulars of specified requests and responses to the side for a moment, Petitioner seeks discovery directed to the following underlying factual matters allegedly pertinent to the case itself.

*First*, Petitioner maintains that Respondents "are compiling records in this matter, such as Brown's canteen records, kites and medical records, in, what Brown believes, will be an attempt to discredit Brown's allegations of mental impairments." Petitioner posits that Respondents thereby, *inter alia*, will "attempt to argue that if Brown could manage his money, he could file a habeas petition." Petitioner contends that he therefore should be permitted

---

[1] #31, Ex. 125, at 9-10.

[2] See ## 20, 25 & 27.

discovery of "other records generated by himself or by NDOC in connection with Brown's incarceration (such as canteen records) to prepare a defense to Respondents's arguments."[3]

*Second*, Petitioner maintains that "Respondents have produced a memorandum outlining summaries of interviews conducted with correctional officers who had contact with Brown." Petitioner contends that he "is entitled to evidence identifying the names of other correctional officers who might provide evidence in support of his position."[4]

*Third*, Petitioner maintains that Brown was restrained by force by the Critical Emergency Response Team (CERT) on April 20, 2012, upon his transport to the Northern Nevada Correctional Center (NNCC) for evaluation by Respondents' mental health expert. Petitioner contends that records regarding the use of force, Brown's interactions with NDOC officials and his subsequent classification – including a videotape of the incident – are "relevant to any mental health and/or cognitive testing following the use of force." Brown was evaluated by Respondents' expert one week after the incident, on April 27, 2012.[5]

Petitioner contends that further discovery of NDOC records is necessary because federal habeas counsel is not confident that counsel has a complete copy of what should be in Petitioner's I- and C-Files. Petitioner outlines a litany of circumstances, from this case and others, where personnel with the Federal Public Defender have been told allegedly inconsistent things from one time to another and/or from one NDOC employee to another regarding what is contained in what files, where those particular files are maintained as an inmate is transferred within the system, and as to the applicable retention policy for the particular files. It appears that there are different procedures followed for each different type of file, such as a legal visitation file at a particular institution.[6]

/ / /

---

[3] #40, at 13; #48, at 2-3.

[4] #48, at 3.

[5] #48, at 3-4 & 7.

[6] #40, at 6-11; #48, at 8.

Petitioner maintains that federal habeas counsel has been "surprised" at evidentiary hearings and on motions in other cases when the respondents have presented records that previously were unknown to counsel.[7]

Petitioner seeks an order directing the discovery of "any and all records generated by Brown or NDOC in connection with Brown's incarceration," including but not limited to a listing, not counting extensive subparts, of 42 categories of documents and information spanning nearly two full pages. Every conceivable piece of paper and/or electronic file that ever could be generated in connection with an inmate's incarceration appears to be encompassed within the list, including, *e.g.,* chapel records, canteen records, and accounting office documents. Petitioner originally sought in the motion in person review by counsel of "any and all" such records, but he trimmed this particular request in the reply to just the I- and C-Files. Petitioner further seeks to depose NDOC record custodians from the central office as well as from the four different institutions at which Petitioner has been incarcerated over the years.[8]

Respondents, *inter alia*, challenge both whether there is need and good cause for the discovery as well as the burdensome and disruptive nature of the extensive discovery sought. Respondents maintain that the discovery permitted should be restricted only to: (a) written interrogatories regarding NDOC records policies and procedures; and (b) records identifying correctional officers who monitored Brown during the disputed equitable tolling period. Respondents further continue to urge, however, that "NDOC is not technically a party to this action," although they accede to the above discovery regarding information and documents under NDOC control as preferable to the extensive discovery sought by Petitioner.[9]

***Governing Law***

Rule 6(a) of the Rules Governing Section 2254 Cases (the "Habeas Rules") provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal

---

[7] #40, at 11-12.

[8] #40, at 12-13 & 14-15.

[9] #42, at 3, 5-6, & n.5.

Rules of Civil Procedure . . . ." In *Bracy v. Gramley*, 520 U.S. 899 (1997), the Supreme Court held that Habeas Rule 6 was meant to be applied consistently with its prior opinion in *Harris v. Nelson*, 394 U.S. 286 (1969), which expressly called for the adoption of the rule. 520 U.S. at 904 & 909. In *Harris*, the Supreme Court held that "where specific allegations before the court show reason to believe that the petitioner *may*, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." 394 U.S. at 300 (emphasis added). In *Bracy*, a unanimous Supreme Court overturned a decision denying discovery where the petitioner's claim of judicial bias in his particular case was based on "only a theory," where the claim was "not supported by any solid evidence" with regard to the theory, and where the Court expressly noted that "[i]t may well be, as the Court of Appeals predicted, that petitioner will be unable to obtain evidence sufficient to support" the theory that the petitioner sought to pursue in the discovery. 520 U.S. at 908 & 909.

The Ninth Circuit, consistent with *Bracy* and *Harris*, accordingly has held repeatedly that habeas discovery is appropriate in cases where the discovery sought only might provide support for a claim. *See, e.g., Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005); *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997). *See also Osborne v. District Attorney's Office*, 521 F.3d 1118, 1133 (9th Cir. 2008), *reversed on other grounds*, 557 U.S. 53 (2009)(in discussing its precedent in *Jones* as to habeas discovery, the Ninth Circuit emphasized the availability of discovery that, as emphasized by the Court of Appeals, only *"may* establish" a factual basis for the petitioner's claim).

### *Discussion*

In pertinent part vis-à-vis this discovery issue, the relevant inquiry at the evidentiary hearing will be whether Petitioner's alleged mental impairment constituted an extraordinary circumstance that stood in Petitioner's way and prevented a timely filing of the federal petition despite his pursuing his rights diligently. Under controlling Ninth Circuit precedent, the relevant inquiry in particular will be: (1) whether Petitioner's alleged mental impairment was so severe that Petitioner either (a) was unable rationally or factually to personally understand

1  the need to timely file, or (b) was unable personally to prepare a habeas petition and
2  effectuate its filing; and (2) whether Petitioner diligently pursued the claims to the extent he
3  could understand them, but the mental impairment made it impossible to meet the filing
4  deadline under the totality of the circumstances, including reasonably available access to
5  assistance.  *See Bills v. Clark*, 628 F.3d 1092, 1099-1100 (9th Cir. 2010).

6  Against this backdrop, Petitioner is seeking extensive, burdensome discovery on what
7  are little more than debating points between counsel on collateral factual matters.

8  With regard to Petitioner's first underlying factual area of concern, it would be one thing
9  if Respondents, possibly, were seeking to establish that Petitioner had engaged in some
10 extensive and prolonged intellectual endeavor, such as an intense, time-sensitive, and graded
11 college-level correspondence course.  Such activity would tend to demonstrate Petitioner's
12 ability to maintain the intellectual concentration, persistence and pace necessary to prepare
13 and file a timely federal petition.  What the Court clearly will not find in this case, however, is
14 that an allegedly intermittent psychotic condition is disproved by purchases of candy bars in
15 the canteen and/or by an inmate's ability to thereby "manage" a controlled inmate trust fund
16 account that allows purchases when he has money and does not when he does not.  The
17 Court acknowledges that in other habeas cases respondents repeatedly have sought to
18 maintain that relatively minor acts such as, *e.g.*, that the filing of a one-paragraph grievance
19 regarding some minutiae of prison life, demonstrates the ability to maintain the concentration,
20 persistence and pace necessary to prepare and file a timely federal petition.  However, the
21 Court is not aware of an instance to date where such an approach has carried the day as
22 against qualified mental health expert testimony otherwise establishing a basis for tolling.  The
23 Court will not allow the highly burdensome discovery sought by this motion to troll for evidence
24 to counter evidence that the Court routinely disregards in the first instance.

25 With regard to Petitioner's second factual area of concern, Respondents do not object
26 to the production of records necessary to identify correctional officers who monitored Brown
27 during disputed equitable tolling periods.  Petitioner maintains that he does not seek in this
28 / / /

regard records beyond the periods relevant to the equitable tolling inquiry.[10]  However, Respondents are referring to the two periods of otherwise untolled time.  Petitioner, in contrast, is referring to the over six-year period continuously from November 11, 2003, to March 18, 2010, including the period when Petitioner's state post-conviction petition statutorily tolled the federal limitation period.  Petitioner seeks an extensive list of records in this particular regard that also itself spans two pages.[11]

Here, too, counsel are laboring over evidence – lay perceptions of a petitioner at sundry times – that in truth has little bearing on the resolution of the issues presented.  If a mental health care expert opined that an inmate was in a catatonic state at all times for a seven-year period, then lay testimony as to normal interaction with the inmate during that period would be highly significant.  Such testimony has far less significance, however, when it is alleged that the inmate suffers from an intermittent psychosis that interferes with sustained pursuit of legal work without assistance. The Court will permit discovery of – limited – records necessary to identify the correctional officers and it will do so for the entire period from November 11, 2003, through March 18, 2010.  The Court will permit the discovery for the entire such period given that a petitioner's mental health condition at one time potentially can have relevance to his condition at another time or overall.  The Court will restrict the records produced, however, to *only* such records as are necessary to identify the correctional officers in question.  The Court is not fully conversant with NDOC institutional records, but it would appear from at least the listing provided that something in the nature perhaps of a unit log or shift log would suffice for the purpose of identifying which officers potentially were in a position to observe Petitioner.

With regard to Petitioner's third factual area of concern, the Court just does not see the benefit of -- or good cause for -- the extensive discovery sought regarding the April 20, 2012, CERT incident one week before Petitioner was evaluated by Respondents' mental health

---

[10]See #48, at 5.

[11]#48, at 5-7.

1 expert. If there were any *sequelae* from the incident a week before, it is difficult to imagine
2 how any such condition would have *improved* Brown's test scores and/or positively impacted
3 his evaluation assessment in what was an independent medical examination by the adverse
4 parties' expert. Delving into, for example, but not limited to, incident reports – much less a
5 real-time video recording – from the incident involves yet-again extensive discovery into a
6 highly tangential and collateral matter.

7 Nor is it a core issue in this case whether NDOC is a bureaucracy with overlapping and
8 sometimes inconsistent records procedures. At this stage in the case – after Petitioner
9 already has pursued discovery prior to filing a counseled show-cause response and an
10 evidentiary hearing is set for a hard date – the Court is not going to send this case off into a
11 full bore examination of every conceivable nook and cranny of NDOC's records procedures
12 and policies. Per Respondents' concession regarding same in the opposition, the Court will
13 permit one set of interrogatories regarding NDOC records procedures, subject to the
14 restrictions of Rule 33(a)(1) of the Federal Rules.[12]

15 To the extent that Petitioner refers to counsel being "surprised" by the revelation of
16 additional NDOC records at evidentiary hearings in other matters, there should be no such
17 in-hearing revelation of exhibits under the pre-hearing procedures provided for both in this
18 case and in the referenced cases. The scheduling order provides for the exchange of witness
19 and exhibit lists and also of exhibits not already possessed by counsel.[13] All the same, the
20 pre-hearing procedures are not intended to replicate all of the extensive pretrial procedures
21 in a general civil case. They constitute a truncated set of procedures scaled down to an

---

[12]If federal habeas counsel wishes to attempt to obtain extensive discovery regarding NDOC records policies, counsel is going to have to, at the very least, seek such discovery: (a) from the outset, in the first discovery motion; and (b) in the context of discovery directed to *core factual matters*, not collateral matters such as canteen purchases. The Court expresses no opinion as to the suitability of such a discovery request in another case, but good cause for same has not been demonstrated for this case. The Court especially is not going to permit federal habeas counsel, particularly at this juncture in this case, to pursue discovery in this case quite obviously in no small part conceived to generate a comprehensive trove of information on NDOC records policies for use in other litigation. Good cause for same for *this* case, again, has not been shown.

[13]#34, at 1.

evidentiary hearing on a threshold timeliness issue. Indeed, the pre-hearing procedures often apply in cases where no discovery is ordered, such that counsel in hearings in such cases often are to an extent "surprised" by exhibits listed or by testimony later presented at an evidentiary hearing. If Petitioner gets, extensively, "sandbagged" with exhibits in the exchange that should have been produced in response to a formal discovery request and which are directed to a substantial material issue, the Court will consider additional relief.

In this vein, Petitioner further relies upon provisions of the Federal Rules of Civil Procedure setting forth the broad ambit of initial disclosure without discovery, the broad ambit of required pretrial disclosure, and the broad scope of discovery overall in general civil litigation. These provisions and the cases cited applying these provisions in general civil litigation have no application to this case. This is a *federal habeas case*, not general civil litigation, and Petitioner has the burden of demonstrating good cause for discovery under Habeas Rule 6(a). There is no required initial disclosure, no required pretrial disclosure, and no established presumption in favor of automatic broad-scoped discovery. Even in general civil litigation, the availability of discovery measures has been sharply reined in by the Supreme Court in the Federal Rules of Civil Procedure precisely because of overextensive and overburdensome discovery directed to increasingly collateral issues.[14] Federal habeas

---

[14] Petitioner posits that Respondents have failed to cite any case law that requires Petitioner to select the least burdensome discovery method, and he urges that the choice of discovery methods is normally up to the party promulgating discovery. #48, at 9-10.

In contrast, Habeas Rule 6(b) expressly requires that a *habeas* party requesting a court order for discovery "must also include any proposed interrogatories and requests for admission, and must specify any requested documents." Petitioner cites *Payne v. Bell*, 89 F.Supp.2d 967 (W.D.Tenn. 2000), for the premise that once good cause is found, a habeas petitioner may use any discovery method. *Payne* was decided four years before the 2004 amendment to Rule 6(b) adding the above language. Moreover, the out-of-context statement aside, what actually *occurred* in *Payne* was fully consistent with the later express statement in Rule 6(b). The petitioner there filed the proposed discovery requests with the motion for discovery.

This Court generally has relaxed this particular requirement in Rule 6(b) and instead has proceeded on the assumption that such particularized advance oversight of the specifics of habeas discovery generally is not necessary. The Federal Public Defender's extensive discovery request – and argument – in this case is causing the Court to have substantial second thoughts in this regard. There is no automatic, broad-scoped discovery in federal habeas. If the Federal Public Defender is going to proceed as if it there were, worse yet on the basis that habeas discovery can be pursued without any regard to burden, the Court is going to have
(continued...)

1 counsel should not expect to conduct full bore discovery as in general civil litigation in federal
2 habeas matters, much less as in discovery in general civil litigation as it existed before being
3 so curtailed in the Federal Rules.  Petitioner first *must show good cause* for *all* discovery
4 sought in a federal habeas matter.  Petitioner has not demonstrated such good cause here
5 for the full range of discovery sought, particularly given the late stage in the show-cause
6 proceedings in which the discovery is sought, the extensive and highly burdensome discovery
7 sought, and the collateral nature of the underlying factual issues ostensibly pursued by such
8 discovery.

9         The Court accordingly comes to one last point, that regarding whether party discovery
10 requests directed to the Respondent Warden seeking documents and information within
11 NDOC control are subject to valid objection in this and other habeas matters on the basis that
12 the Department is not a party to the litigation.  Respondents have acceded on this particular
13 motion to limited discovery being directed to documents and information within NDOC control,
14 but they continue to maintain that "NDOC is not technically a party to this action."  The Court
15 reiterates, as discussed in the prior order (#25), that the proposition that documents and
16 information within NDOC control are not subject to party discovery directed to the Respondent
17 Warden, on the basis that the Department is a distinct third party, is frivolous.  *Inter alia*, a
18 warden named as a respondent in a § 2254 habeas action is named inherently in his official
19 capacity as an agent of the state department of corrections.  *See,e.g., Smith v. Idaho*, 392
20 F.3d 350, 355-56 (9th Cir. 2004).[15]  Under well-established law, an official-capacity suit
21 represents merely another way of pleading an action against the entity of which the officer is
22 an agent, and "is, in all respects other than name, to be treated as a suit against the entity."

---

[14](...continued)
no choice but to more rigorously apply the prerequisite requirements of Habeas Rule 6(b) to future motions for habeas discovery.

[15]Under N.R.S. 209.161, "[t]he Director shall appoint a warden for each institution of the Department" and "[e]ach warden is responsible to the Director for the administration of his or her institution, including the execution of all policies and enforcement of all regulations of the Department pertaining to the custody, care and training of offenders under his or her jurisdiction."

-10-

*E.g., Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Party discovery directed to the Respondent Warden seeking documents and information within NDOC control may not be avoided based on the premise that NDOC has not been explicitly named as a respondent. This is a frivolous objection that will not be countenanced as a basis for obstructing court-ordered discovery in habeas matters in this Court.

So as to avoid any possible associated delay in discovery in this case, the Court will entertain a motion by petitioner to join the Director of the Nevada Department of Corrections as an additional respondent herein pursuant to Rule 20(a)(2) of the Federal Rules of Civil Procedure. As the Court discussed in the prior order, the Director also is an appropriate named respondent in a § 2254 proceeding. See #25, at 3-4 & n.4. *Accord Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 894-96 (9th Cir. 1996)(the California Director of Corrections was a proper respondent); *see also* N.R.S. 209.131(4)("The Director shall . . . [b]e responsible for the supervision, custody, treatment, care, security and discipline of all offenders under his or her jurisdiction.").

The Court trusts that its strong disfavor of this frivolous argument again has been effectively communicated to Respondents. The governing law indisputably limits the scope of review generally applied on the merits in federal habeas actions, and the federal courts always will be mindful of concerns of federalism and comity when presented with a request for collateral review of a state court judgment of conviction. However, the Court has, as it must, broad authority to fashion appropriate relief in a federal habeas matter. If state correctional officials are inclined to put obstacles in the way of court-ordered party discovery in a habeas matter based upon the meritless proposition that documents and information within the control of the state department of corrections are not subject to party discovery even though one of its wardens is named as a respondent, the Court will cut through that frivolous objection.

IT THEREFORE IS ORDERED that Petitioner's second motion (#40) for leave to conduct discovery is GRANTED IN PART and DENIED IN PART, such that, no later than **twenty-one (21) days** from entry of this order, Petitioner may serve the following discovery

without further order of the Court: **(a)** a Rule 34 request for production of documents seeking only such documents as are necessary for the purpose of identifying which correctional officers potentially were in a position to observe Petitioner from November 11, 2003, to March 18, 2010, such as, potentially, unit logs or shift logs, explicitly *without* a requirement that Respondents produce "any and all" documents that also might contain the same information sought; and **(b)** one set of Rule 33 interrogatories, subject to the limitations of Rule 33(a)(1) as applied separately to the one set of interrogatories, seeking responses regarding the policies and procedures of the Nevada Department of Corrections and/or of individual facilities operated by the Department, for the period on and after November 12, 2003, through the present, regarding the creation, location, and retention of records. Petitioner's counsel further may conduct in-person review and copying of the I- and C-Files, only, and only as those actual files in fact have been maintained,[16] at a time or times agreeable to the parties.

IT FURTHER IS ORDERED that Petitioner shall have **fourteen (14) days** from entry of this order within which to file a motion for joinder of the Director of the Nevada Department of Corrections as an additional named respondent herein. The filing and grant of such a motion shall not be regarded as a prerequisite herein to Petitioner pursuing court-ordered party discovery as to documents and information within the control of the Department.

IT FURTHER IS ORDERED that Respondents' motion (#43) to file records under seal and motion (#45) to seal exhibits are GRANTED. The Court finds, in accordance with the requirements of *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), that a compelling need to protect the privacy and personal identifying information of Petitioner as well as other individuals referenced in the records outweighs the public interest in open access to court records.

/ / /

---

[16]That means that this provision does not direct that Petitioner's counsel must be allowed in-person review of any and all files that allegedly "should be" contained in the I- and C-Files. Counsel may review the actual files, as they are actually maintained, to see what is actually in the files. Counsel may not "bootstrap" this provision into a requirement for in-person review of anything over and above what actually in fact is in the actual, real-world files.

IT FURTHER IS ORDERED that Petitioner's motion (#47) for an enlargement of time is GRANTED *nunc pro tunc* in connection with the reply (#48) filed on June 27, 2012.

DATED: July 30, 2012

_____
PHILIP M. PRO
United States District Judge