# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

JOHNNY RAY BROWN,

    *Petitioner*,

vs.

BRIAN WILLIAMS, *et al.*,

    *Respondents*.

2:10-cv-00407-PMP-GWF

ORDER

This represented habeas matter under 28 U.S.C. § 2254 comes before the Court on Respondents' motion (#69) to dismiss. Respondents contend that: (a) Grounds 1(A), 1(F) and 1(I) are unexhausted; and (b) Grounds 1(A) and 1(H) do not relate back to a claim in the original federal petition.

## *Background*

Petitioner Johnny Ray Brown challenges his 2002 Nevada state conviction, pursuant to a jury verdict, of three counts of sexual assault and one count each of battery with intent to commit a crime, burglary and grand larceny. He challenged the conviction in the state courts on direct appeal and state post-conviction review. This Court previously found, following an evidentiary hearing, that the original federal petition was timely based upon equitable tolling.

## *Exhaustion*

Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust state court remedies on a claim before presenting that claim to the federal courts. To satisfy this exhaustion requirement, the claim must have been fairly presented to the state courts

completely through to the highest court available, in this case the Supreme Court of Nevada. *E.g., Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003)(*en banc*); *Vang v. Nevada*, 329 F.3d 1069, 1075 (9th Cir. 2003). In the state courts, the petitioner must refer to the specific federal constitutional guarantee and must also state the facts that entitle the petitioner to relief on the federal constitutional claim. *E.g., Shumway v. Payne*, 223 F.3d 983, 987 (9th Cir. 2000). That is, fair presentation requires that the petitioner present the state courts with both the operative facts and the federal legal theory upon which the claim is based. *E.g., Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005). The exhaustion requirement insures that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon and correct alleged violations of federal constitutional guarantees. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

Under *Rose v. Lundy*, 455 U.S. 509 (1982), a petition presenting both exhausted and unexhausted claims must be dismissed without prejudice unless the petitioner dismisses the unexhausted claims or seeks other appropriate relief.

The controlling exhaustion issue presented is whether the claims of ineffective assistance of trial counsel in Grounds 1(A), 1(F) and 1(I) of the Amended Petition (#66) either were fairly presented to the Supreme Court of Nevada on the state post-conviction appeal or were decided by that court. The same basic issue is presented as to each one of the three claims, and the Court therefore discusses the exhaustion issue as to the claims together.

In Ground 1(A), Petitioner alleges that he was denied effective assistance of trial counsel when counsel failed to call a metallurgist or similar expert to address whether Brown hit the victim with a cast iron skillet or frying pan with sufficient force to crack the skillet. In Ground 1(F), Petitioner alleges that he was denied effective assistance when trial counsel failed to move to suppress his statement to the police. In Ground 1(I), Petitioner alleges that he was denied effective assistance when trial counsel failed to further develop evidence of the victim's alleged drug use, including calling a proper witness to introduce toxicology reports and hiring an expert to explain the impact of her drug use on her perception of the events in question.

The Court proceeds on the premise accepted in the briefing that the claims in federal Grounds 1(A), 1(F), and 1(I) were among the claims of ineffective assistance of trial counsel presented to and/or considered by the state district court.[1]

In the opening brief on the post-conviction appeal, Brown presented the following issue: "After first finding that trial counsel was ineffective, was it error when the district court failed to find that but for counsel's ineffectiveness there was a reasonable probability that the result of the proceedings would have been different?"[2] Brown discussed the district court's ruling and sought to maintain that the evidence supporting the conviction was not strong. He concluded the background discussion with the assertion that "[i]t was a physical impossibility that a skillet was broken over the complaining witness' head as reported by her."

Brown thereupon argued:

> That stated, there are four notable and specific failings (among the others already referred to) of the ineffective trial counsel, each of which individually had a prejudicial impact on the ultimate verdict, but which taken cumulatively leave no doubt that the second prong of Strickland was met. These are: (a) failure to move to preclude references to fugitive status, subsequent violent behavior in custody and threats to a corrections officer; (b) opening the door to prior bad acts of the defendant; (c) calling a "defense witness" who painted the defendant as violent while bolstering credibility of Coates; and (d) failure to adequately cross-examine Coates. The trial court stated that trial counsel "did a good job as far as the victim was concerned [with] what she had to work with." (Trans. 11/03/06, p. 71). However, given what was at stake, and the fact that trial counsel's shortcomings shaped what "she had to work with" vitiate the conclusion that the outcome would not have been different had trial counsel objectively performed at even minimal levels of effectiveness.
>
> Regarding the four primary areas of ineffectiveness (and not to discount the almost dozen other instances of failure to prepare and/or object), the case law is clear that Brown was prejudiced.

#31, Ex. 111, at 17-18.

---

[1] See #30, Exhs. 82 (counseled memorandum in support of original state petition), 91 (counseled supplemental petition by substitute counsel) & 99, ¶¶ 9-23 (state district court order).

[2] #31, Ex. 111, at 1.

1  What followed was seven pages of detailed argument alleging prejudice sustained from
2  the four claims of ineffective assistance of counsel, under (a), (b), (c), and (d) subheadings
3  corresponding to the four claims specified in the above-quoted paragraph. Other than
4  conclusorily "not discounting" the other claims of ineffective assistance of trial counsel
5  presented below in the state district court, Brown did not present any specific argument to the
6  state supreme court as to prejudice sustained as to such claims.[3]

7  Subsequently, in Brown's reply brief, he sought to take the State to task for not
8  discussing any claims of ineffective assistance of counsel other than the four specifically
9  argued in the appellant's opening brief:

> Thus framed, the State ventures to offer argument on the four issues highlighted in the Opening Brief. For the sake of brevity, however, the Defendant did highlight four issues, but with the caveat that there at least were numerous other areas of concern where the ineffectiveness of counsel impacted the outcome. (See Opening Brief, pages 11-12, 17-18). The State does not attempt to discuss or distinguish any of these concerns. In fact, there is no argument whatsoever concerning these areas which include: (1) the failure to call expert witnesses (Trans. 10/06/06, p. 11); (2) concession by counsel that the victim was indeed battered (Trans. 10/06/06, p. 12); (3) failure to follow-up on Coates drug usage, including her non-testimonial admitted use of methamphetamine (Trans.11/03/06, p. 9-15, 55); (4) failure to offer a self-defense instruction despite the fact that it was the Defendant's theory of the case per his statement introduced at trial (Trans.11/03/06, p. 18); (5) failure to question the sexual assault nurse regarding the significance of her lack of finding any evidence whatsoever of physical trauma (Trans. 11/03/06, p. 26-27); (6) failure to question any witnesses about a condom found at the scene despite referencing it in closing statements (Trans. 11/03/06, p. 28-30); (7) failure to move to suppress the Defendant's statement despite indicia that he was and is mentally ill (Trans. 11/03/0, p. 32-34, 36).
>
> Nonetheless, since the State attempts to diminish the totality of impact of the ineffectiveness found by the trial court to be based on a "totality of the circumstances," it is incumbent to identify the weaknesses the State's arguments set forth in their Answering Brief. This is especially true as they relate to the determinative outcome of the errors on the jury verdict.

#31, Ex. 113, at 3-4.

---

[3] See #31, Ex. 111, at 18-25.

1       Notably, after taking the State to task for not addressing the seven claims as

2 conclusorily listed in the reply -- which had been referred to in the opening brief as "the almost

3 dozen other instances" of ineffective assistance – Brown then once again provided no

4 argument specific to the claims. He instead presented specific argument only as to the four

5 claims previously specifically argued in the opening brief.[4]

6       In its order of affirmance, the Supreme Court of Nevada stated:

> Finally, in his opening brief Brown made reference to trial counsel's "almost dozen other instances of failure to prepare and/or object."[FN1] Brown did not make any cogent argument regarding these additional claims, but in his reply brief he faults the State for failing to address them in its answering brief. It is the appellant's burden to demonstrate error below. Fairman v. State, 87 Nev. 627, 629, 491 P.2d 1283, 1284 (1971). Because Brown did not present any argument in support of these claims, he fails to demonstrate any error below. Therefore, we conclude that the district court did not err in denying these additional claims.
>
> [FN1] In his reply brief, Brown lists seven additional claims. Brown claims that trial counsel: (1) failed to call expert witnesses, (2) conceded that the victim was battered, (3) failed to follow up on the victim's drug usage, (4) failed to offer a self-defense instruction, (5) failed to question the sexual assault nurse about her lack of findings of physical trauma, (6) failed to question any witnesses about a condom found at the crime scene, and (7) failed to move to suppress the defendant's statement to police.

19 #31, Ex. 117, at 5-6.

20       Petitioner sought rehearing in part on the ground that the Supreme Court of Nevada

21 improperly concluded that he had failed to present cogent argument on the other claims. He

22 thereupon, once again, provided specific argument regarding only the four claims argued in

23 the opening brief. The Supreme Court of Nevada denied the rehearing petition with a one-line

24 citation to Rule 40(c) of the Nevada Rules of Appellate Procedure.[5]

25 ////

---

[4] See #31, Ex. 113, at 3-12.

[5] #31, Exhs. 119 & 120.

Brown's briefing in the Supreme Court of Nevada constituted the very antithesis of fair presentation of the unargued claims. A holding in that circumstance that the unargued claims were deemed waived or abandoned, with no disposition of the claims on the merits, would have been in accord with the well-established, if not near ubiquitous, practice of state and federal appellate courts generally. *See,e.g., Nevada Department of Corrections v. Greene*, 648 F.3d 1014, 1020 (9th Cir. 2011).

Significantly, however, Respondents concede that the Supreme Court of Nevada denied the claims on the merits and thus exhausted the claims by actually deciding the claims on the merits.[6]

Respondents further contend, however, that the claims were considered on the merits only as conclusorily presented to the Supreme Court of Nevada, such that the fully-articulated claims in the Amended Petition fundamentally alter the claims exhausted in the state supreme court.

While the argument is not without force, the Court is not persuaded that Respondents successfully can put that fine a point on the issue once they concede that the Supreme Court of Nevada affirmed the lower court's decision on the claims on the merits.

Under *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), "[i]f the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that otherwise might have been available." 501 U.S. at 801. A rebuttable presumption instead applies that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." 501 U.S. at 803. "Strong evidence" is necessary to rebut the presumption. 501 U.S. at 804. Absent such strong evidence, the federal courts look to the last reasoned decision by the lower state court where the higher state court has issued a summary affirmance. 501 U.S. at 805.

/ / / /

---

[6] #73, at 4, lines 4-17.

Such "strong evidence" to overcome the presumption of adjudication is not present here. The Supreme Court of Nevada held that "the district court did not err in denying these additional claims." If the state supreme court is going to thereby summarily affirm the state district court's rejection of the claim on the merits, then the claim, as presented to the lower court, is exhausted. That conclusion follows even where the affirmance is based upon the petitioner not carrying his burden of proof on appeal (as opposed to a finding instead of waiver or abandonment of the claim). The default rule in the general context of exhaustion is that ambiguity in the state court's language regarding the disposition of the claim leads to a conclusion that the claim is exhausted. *Cf. Chambers v. McDaniel*, 549 F.3d 1191, 1197-98 (9th Cir. 2008)(ambiguous language in order denying original writ petition in state supreme court constituted an adjudication on the merits). The Supreme Court of Nevada readily can employ unambiguous language in a situation such as this that would not result in the claim presented in the state district court being ruled upon on appeal and exhausted. The language employed on the state post-conviction appeal in this case, however, does lead to that result, *i.e.,* of the claim presented in the district court being ruled upon on appeal and exhausted.

The Court further is not persuaded by Respondents' alternative argument on these three grounds that the claims decided in the state supreme court's opinion – as generally described therein – did not exhaust the claims described with greater particularity in the state district court (and thereafter in the Amended Petition). The state high court, again, held that "the district court did not err in denying these additional claims," referring, by definition, to the claims presented in the state district court.

Respondents otherwise do not contend that the factual assertions in these grounds in the Amended Petition fundamentally altered the claims as presented to the state district court.

Grounds 1(A), 1(F), and 1(I) are exhausted.[7]

---

[7]Respondents suggested at one point in the motion to dismiss that Grounds 1(G) and 1(H) were not exhausted. See #69, at 5, lines 2-3 & 6. Respondents provided no further argument in this regard, however. Petitioner noted in his opposition Respondents' failure to provide further argument as to any alleged lack of exhaustion of these claims. #72, at 3 n.2. Respondents did not contend otherwise in their reply. Under Local
(continued...)

### *Relation Back*

A new claim in an amended petition that is filed after the expiration of the one-year limitation period will be timely only if the new claim relates back to a claim in a timely-filed pleading under Rule 15(c) of the Federal Rules of Civil Procedure, on the basis that the claim arises out of "the same conduct, transaction or occurrence" as a claim in the timely pleading. *Mayle v. Felix*, 545 U.S. 644 (2005). In *Mayle*, the Supreme Court held that habeas claims in an amended petition do not arise out of "the same conduct, transaction or occurrence" as claims in the original petition merely because the claims all challenge the same trial, conviction or sentence. 545 U.S. at 655-64. Rather, under the construction of the rule approved in *Mayle*, Rule 15(c) permits relation back of habeas claims asserted in an amended petition "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." 545 U.S. at 657. In this regard, the reviewing court looks to "the existence of a common 'core of operative facts' uniting the original and newly asserted claims." A claim that merely adds "a new legal theory tied to the same operative facts as those initially alleged" will relate back and be timely. 545 U.S. at 659 & n.5.

Respondents challenge the relation back of Grounds 1(A) and 1(H).

Petitioner raises a number of general arguments that the Court finds unpersuasive.

The Court is not persuaded by Petitioner's suggestion that *Mayle* establishes a two-part analysis where the Court determines, first, whether the claim is "a new ground for relief" and, second, whether the ground is supported by facts different in time and type from those in the

---

[7](...continued)
Rule LR 7-2(d), the Court accordingly deems abandoned any argument or suggestion that Grounds 1(G) and 1(H) are not exhausted, on the basis that Respondents have consented to a denial of the motion in that regard.

While the Court rules against Respondents' position on the issue of the exhaustion of Grounds 1(A), 1(F), and 1(I), that does not signify that their argument is without arguable force. *Cf. Sandgathe v. Maass*, 314 F.3d 371, 383-84 (9th Cir. 2002)(O,Scannlain, J., concurring in the judgment)(maintaining on the record presented that the claim first had to be presented to the appellate court before looking through to the lower court decision under *Ylst*). Moreover, if the controlling question instead were one solely of whether Petitioner had fairly presented the claims in his appellate briefing, the Court would be inclined to hold that he did not.

original petition. See #72, at 11. Nothing in the portion of *Mayle* cited by Petitioner states such a two-part test. The Supreme Court's references to a claim being "new" did not state part of a test but instead merely were contextual. Obviously, if the amended petition merely realleged the claims in the prior petition, there would be no relation-back issue in the first instance. Nor is the Court satisfied that seeking to determine whether a ground is a "new" ground adds anything of significance to the analysis. The issue under *Mayle* is a simple question of whether "the claims added by amendment arise from the same core facts as the timely filed claims." Regardless of whether claims in an amended petition are in some sense or another "new," the only pertinent inquiry on relation back is whether the challenged claims in the amended petition arise from the same core facts as timely-filed claims in the prior petition.

Second, the Court is not persuaded by Petitioner's suggestion that relation back simply is a question of whether the original petition "provided notice of a claim." The governing standard in *Mayle*, again, is straightforward and simple.[8] Petitioner's argument that such "notice" may be provided by petitioner's state court pleadings is even less persuasive, to the point of frivolity. The question here is relation back to the prior *federal* petition. What petitioner alleged in *state court* pleadings has nil significance on the issue of relation back. Petitioner clearly may not "relate back" to his state court filings.

Third, the Court is not persuaded that the unpublished order appointing counsel in *Cisneros v. Baker*, No. 3:13-cv-00033-LRH-VPC (D. Nev. Mar. 7, 2013), establishes that the Court "should also consider all documents and exhibits attached to Brown's petition in its determination of whether the claims in the amended petition relate back to the original petition." #72, at 12. *Cisneros* stated the Court's construction of the papers presented therein. Prior federal district court orders are not binding precedent within the district. There are myriad other orders in other habeas cases in this Court – based upon the circumstances in

---

[8]Petitioner further might note that the *Valdovinos* decision cited in his brief was vacated by the Supreme Court on other grounds. The panel decision in any event did not establish a "notice" rule that overrides the controlling standard stated by the Supreme Court.

those cases – expressly requiring the petitioner to specifically allege his claims within the body of the petition form itself without incorporation of exhibits, as is required by the instructions for the petition form.[9]  Moreover, the first page of the petition form further requires that the petitioner attach all state court written decisions with the federal petition.  Such attachment does not in and of itself constitute the assertion of any claims.[10]  *Cisneros* states no overarching rule in this District that claims in later pleadings relate back to exhibits submitted with the original petition as to claims not alleged within the body of the original federal petition. In short, nothing in the unpublished order appointing counsel in *Cisneros* sought to, or could, override the governing Supreme Court precedent in *Mayle* that federal habeas pleading is not notice pleading and that claims instead must be alleged with particularity.  *See* 545 U.S. at 655-56.

Against this backdrop, the Court turns to Petitioner's argument specific to the challenged grounds, which he argues together.

Petitioner alleges in Ground 1(A) that he was denied effective assistance of trial counsel when counsel failed to call a metallurgist or similar expert to address whether Brown hit the victim with a cast iron skillet or frying pan with sufficient force to crack the skillet. Petitioner alleges in Ground 1(H) that he was denied effective assistance of trial counsel when counsel allegedly failed to offer instructions on the theory of the defense and for allegedly conceding that he was guilty of battery.

As to the original *federal* petition, Petitioner urges that these claims relate back to allegations under original Ground 4 -- alleging that the state district court erred in not finding prejudice under *Strickland* -- asserting that he had "demonstrated a variety of points to support his claim" of ineffective assistance in the state petition, that he had been prejudiced by the "overall cumulative affect [sic] of trial counsel's errors," and that he "also raised at least a

---

[9]*See Instructions*, ¶ (A)(7); *see,e.g.*, *Stewart v. State of Nevada*, 2:09-cv-01063-PMP-GWF, #19, at 3 (D. Nev. Feb. 9, 2010); *Rankin v. Skolnik*, 3:09-cv-00145-LRH-VPC, #13, at 2 (D. Nev. Nov. 25, 2009).

[10]State court decisions were all that were attached as exhibits with the original petition, just as the form required.

-10-

dozen other points of error."[11]

Conclusory allegations only that a petitioner demonstrated a "variety of points" of alleged ineffective assistance of trial counsel, that he was prejudiced by the cumulative effect of unspecified errors by counsel, and/or that he "raised at least a dozen other points of error" do not provide a basis for relation back of any particular ineffective-assistance claim that the petitioner thereafter might seek to pursue. Such conclusory allegations do not state any claim in the first instance, under notice pleading or otherwise. Such conclusory allegations provide nothing to which to relate back. Under *Mayle*, habeas pleading indisputably is not notice pleading. A finding of relation back based upon such conclusory allegations would eviscerate *Mayle's* holding.

Otherwise, petitioner seeks essentially to establish relation back to his *state court* filings and to copies of state court decisions that the federal petition form required to be attached with the Petition.[12] For the reasons discussed above, these efforts are ineffectual. Petitioner's multiple arguments begging the very simple and straightforward question at issue under *Mayle* are unpersuasive.

Grounds 1(A) and 1(H) do not relate back to the original federal petition.

***Alleged Post-Filing Equitable Tolling***

Petitioner contends that he is entitled to equitable tolling from the constructive *pro se* filing of the *pro se* original federal petition on or about March 18, 2010, through the filing of the counseled amended federal petition on January 30, 2013.

In prior cases, this Court has sought to have the Federal Public Defender present apposite case authority, if any, supporting a claim that such alleged equitable tolling is available after the original federal petition is filed. Counsel has not provided such authority in the past. Nor does counsel do so now, other than to contend that no authority precludes

---

[11] #6, at 15-16 & 25.

[12] The Court does not necessarily hold by implication that the actual content of the required copies of the state court written decisions would be sufficient for relation back even if they were pertinent to the issue.

-11-

such equitable tolling.

The rule in 28 U.S.C. § 2244(d)(1)(D) of course provides a petitioner with a per-claim rule of delayed accrual where the factual predicate of a claim could not have been discovered previously through the exercise of due diligence. Here, however, the claims in question were discovered – and asserted in the state courts – long ago. They clearly are not claims that neither petitioner nor his counsel could discover prior to January 30, 2013, or a year earlier prior to January 30, 2012.

Petitioner, again, presents no apposite case authority holding that he is entitled to post-filing equitable tolling from the filing of the *pro se* federal petition to whenever federal habeas counsel ultimately files a counseled amended petition. Quite arguably, the discovery rule in § 2244(d)(1)(D) more than adequately addresses the circumstance where the original petition is rendered timely by equitable tolling but additional respite from the federal limitation period is required for particular claims. Again, Grounds 1(A) and 1(H) do not qualify for delayed accrual under § 2244(d)(1)(D) because they long have been claims known or knowable to petitioner and federal habeas counsel.

Even if the Court otherwise were to assume that such post-filing equitable tolling might be available in an appropriate case – for claims not otherwise rendered timely by the discovery rule in § 2244(d)(1)(D) -- this is not such a case.

The Court granted Petitioner's motion for appointment of counsel on July 28, 2010. The Court did so within four months of the actual filing of the Petition, following an initial show-cause inquiry as to timeliness. The Court's Order, plainly stated:

> . . . . The Court anticipates at this juncture that, in the order confirming the appointment of the individual attorney, the Court then will allow the represented Petitioner ninety days for counsel to investigate the matter and file a counseled supplemental response to the show cause inquiry. *If appointed counsel instead would prefer to file an amended petition before responding to the show cause inquiry, Petitioner will be able to file a motion by the ninety day deadline to modify the scheduling order and establish a deadline for filing an amended petition.* The Court then will screen the amended pleading before directing further action.

#10, at 1 (emphasis added).

Thereafter, the Court's orders (## 14; 18; & 25, at 6) established and then extended the deadline for the represented petitioner to *either* supplement his *pro se* show-cause response *or* file an amended petition. The Court further again expressly stated: "Nothing in the Court's orders halts the running of the federal limitation period as to the Petition or any claim absent an express direction to that effect." #15 (filed November 8, 2010).

Hence, nothing prevented petitioner at any time from filing an amended petition asserting, *inter alia*, Grounds 1(A) and 1(H).[13] The represented petitioner clearly could have filed an amended petition at any time, without waiting for the conclusion of the show-cause proceedings, adding at the very least known claims that would be evident to federal habeas counsel from the state court pleadings. *Cf. Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1014 (9th Cir. 2009)(the *pro se* petitioner's lack of access to all of his files did not provide a viable basis even for *pre-filing* equitable tolling because he could have filed a timely original petition and then sought to amend to allege additional information).

The Court plainly has put the Petitioner on notice that the mere appointment of counsel does not necessitate a conclusion that the represented petitioner thereafter will be entitled to equitable tolling up until when counsel ultimately files an amended petition. If counsel makes a decision to instead first litigate the overall timeliness of the petition – particularly where the Court expressly has given Petitioner the option to proceed otherwise – counsel clearly should not expect for the petitioner to be given the benefit of post-filing equitable tolling for known claims that could have been presented long before the counseled amended petition is filed.

---

[13]Equitable tolling is appropriate – pre-filing – only if the petitioner can show that: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 130 S.Ct. 2549, 1085 (2010). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir.1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir.2002)(*quoting United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.2000)). The petitioner ultimately has the burden of proof on this "extraordinary exclusion." 292 F.3d at 1065. He accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). *Accord Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007).

1  The Amended Petition was filed over two years after counsel was appointed.  Even on
2 the dubious assumption that equitable tolling may be available post-filing separate and apart
3 from the discovery rule in § 2244(d)(1)(D), Petitioner clearly has not demonstrated a viable
4 basis for such relief here.[14]

5  Grounds 1(A) and 1(H) therefore will be dismissed with prejudice as untimely.[15]

6  IT THEREFORE IS ORDERED that Respondents' motion (#69) to dismiss is
7 GRANTED IN PART and DENIED IN PART such that Grounds 1(A) and 1(H) are DISMISSED
8 with prejudice as untimely.

9  IT FURTHER IS ORDERED that, within **thirty (30) days** of entry of this order,
10 Respondents shall file an Answer to the remaining grounds in the Amended Petition and that
11 Petitioner shall have **thirty (30) days** from service of the Answer to file a Reply.

12 / / /
13 / / /
14 / / /
15 / / /
16 / / /
17 / / /
18 / / /
19 / / /
20 / / /
21 / / /

---

[14]Petitioner's arguments that his claims were exhausted, that the claims present alleged federal constitutional violations, that a petitioner only may pursue one federal petition, and that he allegedly has actively litigated in state and federal court all beg the question.  Such arguments would not provide a basis even for pre-filing equitable tolling.  Petitioner's further bare suggestion that it would be "unfair" to deny him further equitable tolling does not present any viable argument for equitable tolling.

[15]While Respondents also reference Grounds 1(G) and 1(I) in their description of the procedural background, the Court does not read the motion to dismiss as contending that those claims do not relate back.  See #69, at 9.  Respondents did not contend at any point following the reference to the assertion of the claims in the Amended Petition that the claims did not relate back or otherwise were untimely.

IT FURTHER IS ORDERED that no extensions of the deadlines established herein will be considered except in the most extraordinary circumstances.  Requests for extensions of time based upon scheduling conflicts between the demands of cases in this District should be sought in the later-filed case.[16]

DATED: May 20, 2013

_____
PHILIP M. PRO
United States District Judge

---

[16]This case was a reportable three-year case under the Civil Justice Reform Act (CJRA) for the most recent semiannual reporting period for March 31, 2013.  The Court's intention is to have the case fully resolved before the next reporting deadline of September 30, 2013.  That does not signify in any sense that delay has been the fault of any party or counsel.  The Court simply must get the case decided, as it seeks to resolve all matters as promptly as possible even without regard to the CJRA.  Habeas actions are civil actions under federal practice and are subject to the Act's reporting requirements.